May it please the court. My name is Niles Illick and I, along with my co-counsel, represent the appellant. I'm pleased to be here with Dr. Tanya Boss, a first-year lawyer, and I will try to reserve three minutes for her to do rebuttal at the end of my argument. Ultimately, the question before the court this morning is whether the district court erred in finding that Applee was entitled to qualified immunity. The district court found the fact question about whether the use of force violated appellant's constitutional rights under the Fourth Amendment. That issue is not before the court. The disputed issue is whether the law was clearly established. Counsel, do we need to find that, is it Officer Meitzen I'm pronouncing? That's how we've always said it, Your Honor. Do we need to find that he obviously violated the Fourth Amendment for you to succeed? Yes, Your Honor. I think our argument this morning is under oath. Our contention is that the law was clearly established under oath, and I think that to prevail under oath, he must have obviously violated the Fourth Amendment. We contend that the district court erred in two ways. First, the district court failed to address our argument under oath as required under Rule 56A, and second, if somehow the court did address that argument under Rule 56A, the district court erred in finding that the law was clearly established. What case is clearly established? Well, the clearly established has to go under hope. I'm sorry? It has to go under Hope v. Delser. That's the only case that we contend is clearly established. And you cited that in district court? We did, Your Honor, page 159 of the appendix, 158 through 159 of the appendix. Now, the duty, our first argument is that the district court had a duty to address appellant's argument under hope. This duty arises out of Rule 56A, which is the court is aware says that the district court shall state its reasons for granting or denying a motion for summary judgment. In this instance, the district court did not address appellant's argument under hope. This is error. The question here is whether hope applies. But that's a question that should have been addressed in the first instance in the district court. And then if that resolution was not satisfactory to one of the two parties, then of course we would come up here. But we're coming up here in the first instance without hope having been addressed as it should have been under Rule 56A. But if we assume for a moment that somehow hope is even tangentially addressed in the opinion from the district court, certainly they didn't go forward to state the reasons for granting or denying the motion as required under Rule 56A. Well, the court did provide ample reasoning for its decision. But it didn't, Judge Kelly, for denying this under hope. Well, do you say, do you have to say I'm denying under hope? Or can you look at all of the facts and all of the cases and say this is what I'm coming up with? I think you could do either way, Justice Kelly, but I don't think it happened here. I do not see a hope analysis here. And if we look to a case, and I'm not sure that it's exactly on point, but pretty close, and we cited it in our brief, Pierce. Pierce was a case in which there was fabricated evidence. And the court went through and talked about that and said this is obviously a matter that couldn't be done. And when we, that was clearly established, I think, as of 1986. And when we look at the court's opinion here, we do not see that type of hope analysis. We see them talk about the facts, but we do not see them do the required hope analysis. Well, what do we do with Scott v. Harris and Mullenix v. Luna? Sure. And I think that, you know, is where the court did an opinion. But I don't think that either one of those cases governs the resolution here. And here's why. The summary judgment evidence shows that what we have here is a non-dangerous car chase. We're going 90 miles an hour, 85 miles an hour, in the middle of the night. Well, you don't know what you've got. The jury may disagree with us and may find it to be a dangerous car chase. But when you look at it, well, this is not the chaser, though. This was a person who was trying to get out of the way when she came barreling through. Well, he was, the tape shows, the video shows that. And Justice Kelly, I have to respectfully disagree. I don't think that at least, this is not the case with Scott v. Harris where it's so absolutely clear that no reasonable juror could disagree one way or the other. Remember in Scott v. Harris, Justice Scalia went through in detail how that was really this Hollywood-style chase, weaving in and out of cars. That isn't what we see only in the way the district court did. So what we have is a rural road at night with absolutely no traffic. You can see the light coming. Well, there was no traffic at that point. What was beyond that? You don't know. Of course. And if it was a, you know, somebody with a baby carriage and, you know, who knows? You've got to do what you got to do. Well, I think that is a question for the jury. I do not think that the district court here- Well, it has to be clearly established. Of course. The law has to be clearly established. But there can be a legitimate fact issue about whether or not the use of force was justified. And our contention here when we look to the use of force is that it wasn't justified. And I think the district court agreed with us on that. And they looked at it and said, we cannot tell definitively whether this is a police officer who deliberately turned in front of a motorcycle, which they testified would have been deadly force, or whether it was a police officer who was trying to get out of the way. And some of the judgment evidence says that had this been- that there was no justification for the use of deadly force here. I mean, that's what- So, in other words, if the jury decided that he had intentionally driven in front of her to crash her so that- to end the chase, you're saying that that would- there may not be a case like that, but that would be egregious conduct that would- would- under Hope and under other cases. Exactly, Justice Phillips. We cannot prevail if this is not an intentional use of deadly force. All right? That- if it's negligent, if he was just swerving out of the way and the jury finds that's the case, we don't have a case. And you concede you don't have a case that's directly on point. Instead, you're out there in the- on the fringe of the egregious conduct and relying on Hope, which, of course, is completely different facts. Well, sure. We rely on Hope, and I concede we do not have a case directly on point, which is why we have to rely on Hope. And, of course, Hope had entirely different facts. They're handcuffing someone to a post in Alabama, but the facts of Hope are not really the issue. It's the legal analysis, the reasoning for Hope, the application of the reason for Hope that we are trying to- and I think this court and the Supreme Court have said we can use in novel cases. And if we can't use Hope in novel cases, then we have sealed off and created- we- it's almost like tea. There are no new cases that could be- that could be constitutional violations. Counsel, assume we agree with you that the district court didn't address Hope or obviousness as a ground for clearly established law. Is there anything that would preclude this we send it back? Why can't we just go ahead and address it? Justice Mathison, I think that is a- that is the question I have struggled with the most in answering this. And I think that probably the court couldn't go wrong in either direction. When I practiced this yesterday, I had a different answer to that. But I think that when- the court could do it in either way. But I think it is important to remember, and we see this from the McCoy opinion that I cited to in the brief, it is admittedly up a shot shadow docket, but it is an instance of the Supreme Court saying, look, we've got a new law here. We're going to send it back to, I think it was the Fifth Circuit, for them to consider in the first instance. They're saying we review the district court's reasoning. And so I think I would encourage this court, even if it sort of flies in the face of judicial economy, to send it back to the district court and have them decide in the first instance. That being said, it is a de novo review, and it is a purely legal question. So I don't think the court would necessarily be prohib- I don't know of any case that would prohibit this court from deciding the hope analysis, doing the hope analysis in the first instance. Turning quickly to our second point on appeal, and that is that if we somehow assume the district court did in fact conduct a hope analysis, I think it's fairly reasonable, I think it's fairly clear that they got it wrong. And we ask you to consider this in the context that we presented it in our brief. And that is, is it somehow unclear that a trained officer could not know that it's unconstitutional to deliberately or intentionally use deadly force against a person whose conduct does not pose a threat to others? I thought the officer conceded that he did not think this was a situation where lethal force was even considered. Exactly. And if that's the case, and he was not attempting to do that, how can you just assume that he was? Well, I think we can look at a series of- I mean, you've got a client who was higher than a kite on methamphetamine and everything else, going 90 miles an hour on a little narrower road. I just am not sure that I'm following your argument that the judge didn't give sufficient reasoning or that there are cases out there that might be applicable to this situation. Okay, and Judge Kelly, I appreciate that question and the opportunity to clarify it. Because I think when you look to the video, which is the only evidence that we could direct the court to, it's easy to look to the very beginning portion of it and not to see the whole thing. But I think that when we look at the video and we look at it in the proper context, summary judgment, deference to the non-movement, we see a police officer drive down the middle of the road. We see no effort to avoid a collision. We see that he engineered this collision. And then we see his conduct afterwards, not calling the emergency line, not getting the prompt medical care, these sorts of things as indications of a deliberate use of force. Now, a jury may disagree with us. They may see it as you deposited it to me this morning. But I think it is a jury's determination to make. And I think that the fact that my client actually did pose a threat to other people, I just don't think we'd get there on the summary judgment evidence that we have. So with that in mind, we ask the district, I'm going to preserve my last two minutes here. But with that, we ask this court to reverse the district court's opinion. I thank you for your attention. And we'll save the two minutes for Thank you. Thank you, counsel. Hello, police department. My name is Scott Wood. I'm here on behalf of the Apple League. Christopher Myson, who in April of 2018 was a police officer in the small town of Calera, Oklahoma. One thing that I think both the parties agree on that there's not very much a factual dispute about how this pursuit came about. And then of course, how it ended because we have that on video. The only fact issue that the district court wrestled with, of course, was what was the officer's intention when he moved the car to the left to get off the roadway. The plaintiff claims that he was intentional in positioning his car to hit the motorcycle. And Officer Myson said, I was simply trying to get out of the way. So it's a fact question. That is. And if indeed the officer did try to crash her motorcycle, isn't there a claim? I don't think so. Not with the state of the existing lawyer, I don't know. I'll tell you why. The Mullinance case, which was decided by the Supreme Court in 2015, kind of cast aside the use of hope initially. And that case involved a high-speed pursuit, little bit different facts. They tried to serve a warrant on a guy at a drive-in restaurant. He took off. He calls the dispatcher and threatens to kill the police if they stop him. We know that case, but what distinguishes that case from this one is the deputy from Overpass was shooting at the engine block. He wasn't trying to kill Mullinance. And if he had testified instead, yeah, I took that aim and I hit him four times right in the heart. Do you think that case would come out the same way? Probably with the state of the case law. Mullinance said, we have never found the use of deadly force to stop a high-speed pursuit to be unconstitutional. So do you say then that Officer Miteson, and of course, we're way past the facts, I'm just trying to get where you think this law settles. Are you saying that you think an officer in Officer Miteson's position could have unholstered his weapon and shot her off her motorcycle and there wouldn't be a 1983 case? You know, I don't know about that. I do know that there are many, many cases where officers use their car to stop a pursuit, to try to disable the other vehicle and so forth. This is a little bit different because this gal's on a motorcycle going 90 miles an hour. He probably has maybe a second and a half to even get a look at her motorcycle as it comes towards him. But we're in a situation where we have to take the facts most favorable to the plaintiff to deal with this issue of qualified immunity. So from that standpoint, I guess we're conceding for the sake of argument, he did use deadly force. He never testified to that, but the judge ruled that people could differ on what he was trying to do when he moved his car to the left based on the last point about drawing inferences at the summary judgment stage. Do we also need to draw an inference that Ms. Osborne did not pose a threat to any bystanders or officers? No, I think based on the video, I think we can say she posed a threat and much like Scott V. Knight, where are the bystanders and where are the officers who might be threatened? Yeah, there were no bystanders by where they were, but we don't know what's down beyond the road where she's going to go to. There's the town of Calera that's not too far away. Plus, you have to take into consideration the risk posed to the officers who were chasing them. And since Scott didn't hear us, they said, we are allowed, the police are allowed to continue a dangerous high speed pursuit because otherwise driver's vehicles would gain immunity or impunity rather by recklessness. And so they were engaged in lawful conduct when they were trying to stop her. The other factors that made this very, very different is you can see how dark it is, I believe, on the video. But the quality of the road, there are no shoulders on the road, there are no lanes marked on this road. And the record indicates that it's a poorly maintained road. It has potholes, chuck holes, patches where it's been patched up and so forth. Could you, you said a few minutes ago, correct me if I'm wrong, you are conceding though that the officer did use deadly force in blocking Ms. Osborne? Well, for the sake of this argument, yes. Okay. And was, just looking at the two prongs of qualified immunity, I know that the arguments right now are focused on the clearly established law. But was there a constitutional violation here? Under the existing case law, I don't think there was. I don't think there was any case law that would put him on notice stopping the motorcycle in the manner he did. But the notice part is more on the clearly established law, isn't it? Whether it would be obvious or the case law would put a reasonable officer on notice. But now we're just talking about whether excessive force was used. And it seems like the district court order didn't really go completely on that analysis on prong one. So what I'm asking you is whether there was a constitutional violation on prong one. I understand your argument on prong two. I just like to know what your position is on prong one. Well, you put me in a corner. I don't want to answer that question because I don't think it's required under Pearson v. Callahan. Because since that time, the court has said, here's prong one, here's prong two. We used to go through the mechanical application of trying to determine whether it was a constitutional violation. I don't mean to put you in a corner. Well, maybe I do. But my understanding of Pearson is that the court has the option of resolving qualified immunity on either prong one or prong two. And if there's no constitutional violation on prong one, that's an option, isn't it? So that's why I mentioned it in your position. Well, I don't think there... I don't think it was a... They had probable cause to seize this gal. And so we're looking at the manner in which it was attempted. If we're to believe that he intentionally drove in front of her or exposed the right side of his car to the motorcycle to make a crash. So from that standpoint, hitting a motorcycle with another vehicle going 90 miles an hour, yeah, to me, I think that's probably be considered deadly force. Certainly. Since Monomax, the Hope analysis is practically dead. Really? How about... Are you familiar with Taylor v. Riojas? I'm not familiar with that case. November 2020 case in which they reaffirmed Hope. Okay. In a use of force case? It's a prison detainment condition. My next comment was going to be, I don't think this board has used Hope in the analysis of a excessive force case since Monomax came out in 2015. I know it's been used in other contexts, like with social worker cases and some other situations, but not in use of force cases. It's simply what we have here simply does not rise to the level of egregiousness that's described by Hope and its progeny. Well, Hope had really nothing to do. I mean, facts are so different that I don't even see how it could possibly pertain to this factual... Yeah, I guess there's two ways to look at that. The facts of Hope, handcuffing someone to a hitching post. Twice. Twice. One time for seven hours. Yeah. After you've been told by the Alabama Department of Justice not to do that, and you're doing it anyway. But there's another way, I think, to look at Hope, and that's just the broader proposition that sometimes an act can be so bad that it's just deemed unconstitutional. We don't need any pre-existing case law. And certainly that's not applicable to the facts of this case. But hasn't the Supreme Court recognized that as a possibility? That is, typically you look for clearly established law based on the Tenth Circuit or the Supreme Court or the weight of the other circuits. But if the violation is one of, I think the court has used this expression, obvious clarity, then that could be a ground for clearly established law. Right. So we keep talking about Hope, but I think there have been several cases that the Supreme Court has talked about obvious clarity in recent years. Would you agree with that? Well, suffice it to say that in light of Hope and the direction Molinax have given the courts to analyze use of force cases set forth the way they did in Molinax. And that is to find a case whose contours factually are similar. They don't have to be identical, but they do have to be similar. And the plaintiff in this case, the appellant, just failed to provide any case similar to the facts of this case that would have told Officer Wyson that what he was doing was a constitutional violation. Any other questions? I'll conclude my remarks. Thank you. Thank you. Thank you. May it please the court, my name is Brionte Loss. Assignment judgment evidence in this case shows that the law was clearly established. Appellant Arden under hoped that the constitutional violation in this case was plain and obvious. The video of this pursuit shows this was not a Hollywood-style case like in Scott and Molinax. The deadly use of force occurred on a remote part of the road where there's no other traffic when the appellant deliberately used his car as a roadblock. Well, are you suggesting that the only time it would be justified if there was a crowd of people standing around? Well, Your Honor, I think the Supreme Court and the Tenth Circuit guidance has instructed us to look at what facts does the officer know at the time that they used deadly force. In Scott and Molinax, for instance, we're dealing with instances where people were swerving in and out of traffic to avoid the suspect as an intoxicated driver. So there was this immediate threat that was being posed. The officer... Unless there's an immediate threat that the policeman can observe, he can't do anything. He can't attempt to stop the fleeing vehicle. Well, Your Honor, we need to go on what is the officer seeing at the time that they're using force. So that unless there's a crowd around or there's a whole bunch of cars that are being weaved in and out, he's got to stop. He can't do anything to stop the driver of the speeding vehicle. Not necessarily, Your Honor. Just going off the facts that we have in this case, all the officer knew that this is a 90 miles per hour chase. We've got the Graham versus Connor case, which sort of suggests that the officer's attempt to violate the Fourth Amendment. Well, Your Honor, under HOPE, with obvious clarity, if we have a case where there are 90 miles per hour... FACTS and HOPE are totally... It's a different type of case. Your Honor, it goes more towards legal analysis that's being applied. HOPE was put in place for reasons to address these cases where there's novel circumstances where a constitutional violation has not necessarily been found in prior case law. I see my time is ending. May I make my remarks? Scott and Mullenix are different cases in that the threat itself is different. We had an intoxicating individual. We had a person that was weaving in and out of traffic. Here, we only had 90 miles per hour car chase. There was no other individuals that were threatened. And also, this was a remote side of the road. We have to go on what the officer knew at the time that he used deadly force, and we just do not have the facts supporting that this was a dangerous car chase like in Scott and Mullenix. Therefore, we need to use HOPE because with obvious clarity, if we do not have those facts supporting a dangerous car chase, that is something that we know that will constitute a reasonable notice to an officer that the right is clearly established. Thank you, counsel. Thank you, Your Honors. Appreciate the arguments. The case will be submitted, and counsel are excused.